UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:12-CV-00178

JAZMINE MOORE                                                                                           PLAINTIFF

v.

MURRAY STATE UNIVERSITY                                                                 DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Defendant's motion to dismiss. (Def.'s Mot., Docket Number ("DN") 4.) The Plaintiff has responded. (Pl.'s Resp., DN 6.) The Defendant has replied. (Def.'s Reply, DN 12.) Fully briefed, this matter is now ripe for adjudication. Having considered the matter and being fully advised, the Defendant's motion is **GRANTED** on the Plaintiff's claims arising under federal law. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and **REMANDS** those claims to state court.

**I.**

In the fall of 2011, Plaintiff Jazmine Moore ("Moore") was enrolled as student at Murray State University ("MSU" or "University") and was also a member of the women's track and field team. (Compl., DN 1-2, ¶ 5.) She alleges that on September 14, 2011, she was sexually assaulted by a male student while in her dormitory on campus. (*Id.* at ¶ 6.) Approximately six weeks later, on October 28, 2011, Moore notified Jennifer Severns ("Severns"), MSU's head coach for women's head track and field, about the assault. (*See* Email of Oct. 28, 2011, DN 1-2, p. 15.)[1] Moore explained that her absence from mandatory team events was the result of the sexual assault. (*Id.*) At the conclusion of the email, Moore asked Severns for information about

---

[1] The emails between Moore and Severns were attached as an exhibit to Moore's complaint and therefore may be properly considered by the Court when ruling on MSU's motion to dismiss. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

available resources that could help her with the physical and psychological impacts of the assault. (*Id.*) Three days later, on October 31, Severns responded to Moore. (*Id.* at p. 16.) Severns encouraged Moore to go to the Women's Center on MSU's campus and offered to schedule an appointment and accompany Moore during her visit to the center. (*Id.*) Moore replied that she wanted Severns to schedule the appointment and take her to the Women's Center. (*Id.*) Through a series of emails Severns and Moore arranged for Moore to go to the Women's Center on November 11, 2011. (*Id.*) Severns explained that she could not accompany Moore on the date of the appointment because she would be out of town for a regional track and field competition. (*Id.*) Moore told Severns that the appointment on November 11 was "fine" and that "I'll go then." (*Id.* at p. 17.) It appears that Moore went to the Women's Center by herself on the scheduled date. Severns allegedly never reported the sexual assault to the MSU Police Department and never followed up or otherwise inquired about Moore's condition. (Compl. DN 1-2, ¶ 13.) Moore self-reported the sexual assault to campus police on December 16, 2011. (*Id.* at ¶ 14.)

Moore filed suit against MSU alleging that Severns's failure to report the sexual assault compromised physical evidence, witness statements, and Moore's safety and security. (*Id.* at ¶ 15.) Additionally, she claims that she "suffered harm and damages in not being able to return and participate in [MSU's] women's track and field team and ultimately the [loss] of scholarship and ability to return to [MSU] as a full-time student." (*Id.* at ¶ 16.) She seeks compensatory and punitive damages for her injuries.

Moore asserts three state and two federal causes of action: (1) negligence; (2) negligence *per se*; (3) failure to comply with the Michael Minger Act, KRS § 164.948 *et seq.*; (4) failure to comply with the Jeanne Clery Act, 20 U.S.C. § 1092 *et seq.*; (5) and failure to comply with Title

IX, 20 U.S.C. § 1681 *et seq.* (*Id.* at pp. 5-12.) This action was originally filed in state court, but MSU removed to this Court pursuant to 28 U.S.C. § 1331 and § 1441. (*See* Notice of Removal, DN 1, p. 1.)

MSU now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the entirety of Moore's complaint.

## II.

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Additionally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

### III.

Moore fails to state a claim under the Jeanne Clery Act, 20 U.S.C. § 1092 *et seq*. because there is no private right of action under that statute. The Clery Act "is a landmark federal law . . . that requires colleges and universities across the United States to disclose information about crime on and around their campuses." *Summary of the Jeanne Clery Act*, Clery Center for Security on Campus, http://www.securityoncampus.org/summary-jeanne-clery-act (last visited March 8, 2013). "The Act is enforced by the United States Department of Education." *Id.* Indeed, the Act itself provides:

> Nothing in this subsection may be construed to –
> (i) Create a cause of action against any institution of higher education or any employee of such an institution for any civil liability; or
> (ii) Establish a standard of care.

20 U.S.C. § 1092(f)(14)(A). Relying on the language of the statute, other courts have concluded that there is no private right of action under the Act. *See Doe v. Univ. of the S.*, 687 F. Supp. 2d

744, 760 (E.D. Tenn. 2009); *King v. San Francisco Cmty. Coll. Dist.*, No. C 10-01979 RS, 2010 WL 3930982, at *4-5 (N.D. Cal. Oct. 6, 2010) ("[T]he Act itself does not provide any private right of action."); *see also* Brett A. Sokolow, *et al.*, *College and University Liability for Violent Campus Attacks*, 34 J.C. & U.L. 319, 344 (2008) ("[T]he Clery Act specifically notes that it cannot give rise to a private right of action to enforce its terms . . . . The enforcing authority for the Clery Act is the U.S. Department of Education."). Because no private right of action exists, Moore's cause of action under the Clery Act fails as a matter of law.

## IV.

Moore also fails to state a claim under Title IX, 20 U.S.C. § 1681 *et seq.* Generally speaking, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979), the Supreme Court held that Title IX was enforceable through a private right of action. The Court later decided that money damages are available in a private suit, *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60 (1992), and that, in the case of teacher-student sexual harassment, such damages are only recoverable where the school district has been "deliberately indifferent" to the harassment, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). Finally, the Court held that student-on-student sexual harassment is actionable under Title IX. *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629 (1999). But, as is the case with teacher-student sexual harassment, the entity receiving federal funds may only be held liable for student-on-student sexual harassment where it "acts with deliberate indifference to known acts of harassment in its programs or activities." *Id.* at 633.

Summarizing *Davis*, the Sixth Circuit Court of Appeals held that in order to establish a

*prima facie* case of student-on-student sexual harassment for the purposes of Title IX, the plaintiff must show:

> (1) that the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school, (2) that the funding recipient had actual knowledge of the sexual harassment, and (3) that the funding recipient was deliberately indifferent to the harassment.

*Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (citing *Davis*, 525 U.S. at 632-42). In the present case, there is no dispute that MSU is subject to Title IX; it is a recipient of federal funds. Furthermore, the type of sexual assault at issue here – an alleged rape – is the type so severe, pervasive, and objectively offensive that it could be said to deprive Moore of the educational opportunities and benefits provided by MSU. *Id.* at 855-56 (finding that a rape is that type of sexual harassment that fulfills the first element of the *prima facie* Title IX case). It is the second and third prongs of the *Davis* test at which Moore's Title IX claim fails as a matter of law. Moore has not alleged that MSU had actual knowledge of sexual harassment *prior* to the assault and there are no allegations that the University was deliberately indifferent to additional incidents of harassment *after* the assault. In fact, the complaint contains no allegations that any further harassment occurred after the assault.

    The relationship between causation and deliberate indifference is vitally important in a student-on-student sexual harassment case and is the point on which this case turns. Under Title IX, plaintiffs do not seek to recover against the perpetrator of the harassment. Rather they bring suit against the entity receiving federal funds "for its *own* decision to remain idle in the face of known student-on-student harassment in its schools." *Davis*, 526 U.S. at 643. Relying on the text of Title IX, the Supreme Court held:

> [Title IX's] plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the

> harassment occurs. If a funding recipient does not engage in harassment directly, it may not be held liable for damages unless its deliberate indifference "subject[s]" its student to harassment. That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. . . .
> These factors combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to "expose" its students to harassment or "cause" them to undergo it "under" the recipient's programs.

*Id.* at 644-45.

The critical piece missing from Moore's complaint is any allegation that she was "subjected" to or experienced sexual harassment *after* notifying Severns about the assault occurring on September 14, 2011. Prior to that time, Severns did not have actual knowledge that Moore had experienced any form of sexual harassment, and even assuming, but not finding, that Severns was deliberately indifferent after gaining knowledge of the assault, there are no allegations in the complaint that her indifference "subjected" Moore to harassment, "cause[d] [her] to undergo" harassment, or "made [her] liable or vulnerable to it." *Id.* at 645. Assuming that MSU was deliberately indifferent after receiving notice of the assault, Moore's complaint is entirely silent and contains no allegation of how that indifference "subjected" her to additional harassment.

Case law supports the proposition that Title IX liability arises only after the institution learns of harassment and is deliberately indifferent to it. For example, in *Soper*, the Sixth Circuit affirmed the district court's Rule 12(b)(6) dismissal because the "defendants did not have actual knowledge of the harassment until *after* the fact [of the harassment] and plaintiffs have failed to present any evidence of deliberate indifference attributable to defendants." *Soper*, 195 F.3d at 855 (emphasis added). In *Williams v. Bd. of Regents*, 477 F.3d 1282, 1296 (11th Cir. 2007), the court explicitly held that "a Title IX plaintiff at the motion to dismiss stage must alleged that the

Title IX's deliberate indifference to the initial discrimination subjected the plaintiff to *further* discrimination." (emphasis added). In *Reese v. Jefferson Sch. Dist.*, 208 F.3d 736 (9th Cir. 2000), a group of high school girls brought a Title IX claim against the school district, alleging that the district had been deliberately indifferent to sexual harassment perpetrated by a group of their male peers. No incidents of harassment occurred *after* the school district learned of the girls' allegations. The Ninth Circuit affirmed dismissal of the Title IX claim and held that the school district was "not liable for the alleged *antecedent* harassment of female students by male students." *Id.* at 740 (emphasis added). "The school district was not deliberately indifferent to sexual harassment of which [it had] actual knowledge in such a way as to cause the plaintiffs to undergo harassment or make them liable or vulnerable to it." *Id.* (quotations omitted). "The plaintiff . . . did not report their harassment to anyone in authority until May 28, 1997 . . . . There is no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations. Thus, under *Davis*, the school district cannot be deemed to have 'subjected' the plaintiffs to the harassment." *Id.* (citation omitted).

In the present case, Moore alleges that she was sexually assaulted on September 14, 2011. She informed Severns of the assault on October 28, 2011. The complaint contains no allegations that Moore was subjected too or experienced further sexual harassment after October 28, 2011. Accordingly, even if MSU was deliberately indifferent to Moore, there are no allegations that the indifference caused her to experience further or additional harassment. As a result, her cause of action under Title IX fails as a matter of law. *See Elgamil v. Syracuse Univ.*, No. 99-CV-611 NPMGLS, 2000 WL 1264122, at *8 (N.D.N.Y. Aug. 22, 2000) ("The circuits that have taken the question up have interpreted [*Davis*] to mean that there must be evidence that actionable harassment continued to occur *after* the appropriate school official gain actual knowledge of the

8

harassment.")

## V.

United States District Courts have "federal question" jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In addition to federal question jurisdiction, district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Id.* § 1367(a). Thus, a district court is granted jurisdiction to hear causes of action arising under state law so long as those claims "form part of the same case or controversy" giving rise to the court's federal question jurisdiction.

Although district courts are granted supplemental jurisdiction under § 1367(a), they may, in their discretion, decline to exercise that jurisdiction for the reasons listed in § 1367(c). Specifically, a district court may decline jurisdiction over a supplemental state law claim where the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). The Sixth Circuit instructs that "generally, 'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (quoting *Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992)). When deciding whether to decline jurisdiction under § 1367(c)(3), a district court must weigh several factors and "should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Id.* (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)). If a district court declines jurisdiction over a supplemental state law claim, it must dismiss the case if it was originally brought as a federal action or otherwise remand to the state court from which it was removed.

In the case at bar, Moore asserts three claims arising under Kentucky state law: (1) negligence, (2) negligence *per se*, and (3) failure to comply with the Michael Minger Act, KRS § 164.948 *et seq.* Because Moore's federal causes of action have been dismissed, however, the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over the remaining state claims and remands them to state court. To do otherwise would cause this Court to needlessly decide state law issues best reserved for state court.

## CONCLUSION

Defendant Murray State University, pursuant to Federal Rule of Civil Procedure 12(b)(6), moved to dismiss the entirety of Plaintiff Jazmine Moore's complaint. For all of the foregoing reasons, Counts Two and Four of Moore's complaint, which allege violations of the Jeanne Clery Act, 20 U.S.C. § 1092 *et seq.*, and Title IX, 20 U.S.C. § 1681 *et seq.*, are **DISMISSED**. The remaining Counts One, Three, and Five, all allege claims arising under state law. Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over those claims and they are **REMANDED** to state court.